**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| CAMELLIA JANE HARDESTY,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 3:25-CV-01906<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff Camellia Jane Hardesty seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). (ECF Doc. 1.) This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter is before the undersigned by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF Doc. 7.) For the reasons set forth below, the Court **AFFIRMS** the Commissioner's decision.

## I. Procedural History

Ms. Hardesty filed her SSI application on February 22, 2023, alleging disability beginning September 21, 2022.[1] (Tr. 10, 88.) She alleged disability due to the following impairments: congestive heart failure; colitis; high cholesterol; chronic obstructive pulmonary disease (COPD), stage 2; peripheral artery disease; restless leg syndrome; carpal tunnel syndrome, bilaterally; attention deficit hyperactivity disorder; anxiety; depression; back issues

[1] Plaintiff also filed an application for Disability Insurance Benefits (ECF Doc. 9, p. 1; Tr. 193-99), but the decision under review relates only to Ms. Hardesty's SSI application (Tr. 10).

(spasms); and memory issues. (Tr. 89, 125, 135, 227.) Her application was denied at the initial level (Tr. 121-30) and upon reconsideration (Tr. 132-39), and she requested a hearing (Tr. 140).

On May 23, 2024, a hearing was held before an Administrative Law Judge ("ALJ"). (Tr. 41-77.) The ALJ issued an unfavorable decision on August 15, 2024, finding Ms. Hardesty had not been under a disability since February 22, 2023, the date the application was filed. (Tr. 7-28.) Ms. Hardesty's request for review by the Appeals Council was denied on July 18, 2025, making the ALJ's August 15, 2024 decision the final decision of the Commissioner. (Tr. 1-6.)

Plaintiff filed the instant Complaint on September 10, 2025 (ECF Doc. 1), and the matter is fully briefed (ECF Docs. 9 & 10). Plaintiff raises the following assignments of error:

> (1) The ALJ erred when she failed to properly apply the criteria of Social Security Ruling 96-8p and consider all of Plaintiff's impairments and related limitations when forming the RFC; and
>
> (2) The ALJ committed harmful error when she failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Plaintiff's symptoms precluded her from engaging in substantial gainful activity on a full-time and sustained basis.

(ECF Doc. 9, pp. 1, 8-17.)

## II. Evidence

### A. Personal, Educational, and Vocational Evidence

Ms. Hardesty was born in 1970 and was 52 years old on the date the application was filed, making her an individual closely approaching advanced age under Social Security regulations. (Tr. 23.) She has a high school education and no past relevant work. (Tr. 23, 228.)

## B. Medical Evidence

### 1. Relevant Treatment History[2]

#### i. Records Predating February 22, 2023 Application Date

On October 12, 2021, Ms. Hardesty saw neurologist Gerald Reiss, M.D., for evaluation and treatment of possible bilateral carpal tunnel syndrome. (Tr. 801.) She reported numbness and tingling in her hands and arms bilaterally. (Tr. 801-02.) Dr. Reiss suspected that Ms. Hardesty's symptoms of hand paresthesia were likely due to carpal tunnel syndrome and ordered an EMG of the upper extremities. (Tr. 801.) Electrodiagnostic studies were performed on November 11, 2021, and were consistent with bilateral carpal tunnel syndrome, moderate on the right and mild on the left. (Tr. 800.)

A chest CT scan performed on July 20, 2022, showed: "Centrilobular emphysema. Stable small bilateral pulmonary nodules. No newer suspicious pulmonary mass or nodule visualized. No acute intrathoracic process." (Tr. 400.)

On September 21, 2022, Ms. Hardesty attended a cardiology appointment with Zoheir Adbelbaki, M.D., at Merch Health. (Tr. 581.) On examination, her lungs were clear to auscultation. (Tr. 586.) Dr. Adbelbaki noted no edema, good peripheral pulses, and no obvious focal deficits. (*Id.*) Dr. Adbelbaki also discussed the importance of stopping smoking, "especially with the risk of CAD [coronary artery disease]." (Tr. 587.)

On February 6, 2023, Ms. Hardesty presented to St. Rita's emergency department, complaining of leg pain and dizziness. (Tr. 308-55.) She reported a history of coronary artery disease, congestive heart failure, COPD, hyperlipidemia, hypertension, and peripheral arterial

[2] The summary of the medical evidence is not exhaustive and is generally limited to evidence cited by the parties that is relevant to the legal and factual issues before the Court.

disease. (Tr. 308.) She reported smoking one pack of cigarettes a day. (*Id.*) Her physical exam showed: normal pulses; decreased breath sounds; no focal neurological deficit; and normal behavior, mood, and affect. (Tr. 312-13.) A CT-angiogram found no abdominal aortic aneurysm, a three-vessel tibioperonal runoff bilaterally, a right external iliac stent, and 5 mm middle lobe pulmonary nodule. (Tr. 895-96.) She was discharged with a prescription for gabapentin and instructions to follow up with Judy Brenek, APRN, CNP. (Tr. 316.)

Ms. Hardesty saw APRN Brenek on February 8, 2023, to discuss neuropathy versus restless leg syndrome (RLS) treatment. (Tr. 473.) She reported aching in her legs with no relief with walking. (*Id.*) She had a BMI slightly above 30. (*Id.*) On examination, her lungs were clear and her heart sounds and rhythm were normal. (*Id.*) Her gait and strength were normal, with no muscle atrophy. (*Id.*) APRN Brenek increased the gabapentin dose and referred Ms. Hardesty to neurology for evaluation and treatment of her leg pain. (Tr. 474.)

**ii. Records During Alleged Disability Period**

On February 22, 2023, Ms. Hardesty saw Elaina Wiedeman, APRN, at the Center for Pulmonary Medicine and Critical Care at Mercy Health for follow up regarding her COPD. (Tr. 606.) Overall, her respiratory symptoms were stable with some physical limitations. (*Id.*) She said she used her inhaler but rarely used albuterol. (*Id.*) Her BMI was 30. (Tr. 611.) Her exam showed: normal pulmonary effort; no respiratory distress; diminished breath sounds; no lower extremity edema; no focal neurological deficits; normal mood and behavior; and normal thought content. (Tr. 612.) She was diagnosed with Stage 2 moderate COPD, cigarette nicotine dependence without complication, and multiple lung nodules as shown on July 2022 CT scan. (Tr. 613-14.) Dr. Wiedeman recommended that Ms. Hardesty continue to use her Stiolto inhaler for COPD and use albuterol every six hours as needed for shortness of breath or wheezing. (Tr.

614.) She advised Ms. Hardesty to quit smoking, and recommended a follow up CT scan in July 2023 to monitor the lung nodules. (*Id.*)

Ms. Hardesty saw ARPN Brenek for a wellness visit on March 27, 2023. (Tr. 696.) Examination findings were generally normal, including clear lungs, normal heart sounds and rhythm, normal gait and strength, and no atrophy. (Tr. 696-97.) Her BMI was slightly over 31. (Tr. 696.) Ms. Hardesty felt less motivated and sad but not suicidal. (Tr. 697.) APRN Brenek started Ms. Hardesty on Trintellix, an antidepressant. (*Id.*) She noted that Ms. Hardesty's COPD was improved and her essential hypertension was stable. (*Id.*)

Ms. Hardesty returned to APRN Brenek on April 12, 2023, for a blood pressure check and follow up regarding Trintellix. (Tr. 693.) Her BMI was slightly above 31. (*Id.*) On examination, her lungs were clear, her heart sounds and rhythm, gait, and strength were normal, and there was no atrophy. (*Id.*) She was diagnosed with an episode of recurrent major depressive disorder, unspecified depression episode severity; essential hypertension; obesity; BMI 31.0-31.9; and nicotine dependence. (Tr. 693-94.) APRN Brenek noted that Ms. Hardesty's hypertension was stable. (Tr. 694.)

A June 4, 2023 lumbar spine CT scan showed: degenerative disc disease at L5-S1 with vacuum phenomenon; moderate loss of disc height at L3-L4 and L4-L5; multilevel disc bulges; moderate midline disc protrusion at L3-L4; mild disc bulge at L4-L5; and moderate diffuse disc bulge or mild protrusion at L5-S1; and no critical stenosis. (Tr. 741-42.)

On June 5, 2023, Ms. Hardesty presented to Jennifer Johnstone, PA-C, at St. Rita's emergency department for low back pain. (Tr. 1388.) She reported going to Lima Memorial the day before for the pain. (*Id.*) She said she was given a Toradol shot, Flexeril pill, and Lidoderm patch but they were not helping. (*Id.*) She reported that her pain worsened with movement and

sitting and was mildly improved with standing. (*Id.*) On examination, she was in no acute distress. (Tr. 1391.) She was cooperative with normal speech and mood. (Tr. 1392.) She had normal heart sounds and rhythm, normal pulmonary effort and breath sounds, and no wheezing. (Tr. 1391.) Examination of the lumbar back showed: tenderness; diffuse pain to palpation mainly over the sacroiliac joint; decreased range motion; and positive straight leg raise test bilaterally. (Tr. 1391-92.) There was good strength in all muscle groups and good plantar and dorsiflexion of the feet and toes. (Tr. 1392.) Her gait and coordination were normal and motor function and sensation were intact. (*Id.*) She was diagnosed with acute low back pain with bilateral sciatica, unspecified back pain laterality. (Tr. 1394.) She was medicated with Valium, Percocet, and prednisone and referred to an orthopedist (Tr. 1393-94.) There is no evidence that Ms. Hardesty followed up with the orthopedist.

Ms. Hardesty saw APRN Brenek on June 8, 2023. (Tr. 743.) She said the lidocaine patch seemed to be helping, but she reported some numbness and tingling in her legs and tenderness in her back. (*Id.*) She was interested in seeing a neurosurgeon. (*Id.*) Ms. Hardesty's BMI was still slightly above 31. (*Id.*) Except for reported back pain with radiation to her legs with numbness, examination findings were unremarkable. (*Id.*) APRN Brenek assessed lumbar disc herniation and ordered a lumbar spine x-ray and MRI. (Tr. 743-44.) She also referred Ms. Hardesty to a neurosurgeon. (Tr. 744.) Lumbar spine x-rays taken that day showed no fracture or spondylolisthesis, no significant facet arthropathy, and minimal superior endplate degenerative changes at L4. (Tr. 739-40.) There is no evidence of follow up with neurosurgery.

On July 24, 2023, a CT lung scan was performed. (Tr. 1354-55.) The scan showed numerous stable pulmonary nodules and one new pulmonary nodule. (Tr. 1354.)

On March 13, 2024, Ms. Hardesty underwent a nuclear stress test with myocardial perfusion (Tr. 1204-07), transthoracic echocardiogram (Tr. 1305), and vascular brachial index testing (Tr. 1324). The stress test showed: normal left ventricular perfusion with no evidence of inducible ischemia and normal post-stress left ventricular function with a post-stress ejection fraction of 74%. (Tr. 1207.) The stress test was negative for myocardial ischemia and infarction. (*Id.*) The echocardiogram showed normal left ventricular systolic function with a visually estimated ejection fraction of 55-60%; normal left ventricular diastolic function; normal left ventricular wall thickness and motion; and normal right ventricular systolic function. (Tr. 1305.) Vascular ankle brachial testing showed normal findings in the left leg and "very slight" peripheral vascular disease in the right leg. (Tr. 1324.)

**2. Opinion Evidence**

**i. Consultative Examiners**

On May 4, 2023, Ms. Hardesty attended a physical consultative examination conducted by B.T. Onamusi, M.D. (Tr. 720-32.) On examination, she walked with a normal but slow and cautious gait. (Tr. 724, 731.) Pulmonary function testing showed moderate obstruction. (Tr. 727.) Straight leg testing was negative bilaterally. (Tr. 724, 731.) She had normal muscle strength, intact sensation, no wheezing, normal memory, and satisfactory attention span. (Tr. 731.) She had impalpable pedal pulses with delayed capillary refill in her toes and feet. (*Id.*) She was able to squat 50% of the way down with pain while holding on to the examination table. (Tr. 731.) There was full range of motion in the joints in her extremities, including in her knees. (*Id.*) There was mild pain with active range of motion in the spine with mild tenderness in the lumbosacral segment of the spine. (*Id.*) She was able to grip and grasp with her hands and use her hands for fine coordination and manipulative tasks. (Tr. 731-32.) Dr. Onamusi assessed Ms.

Hardesty with the following conditions: coronary artery disease with no signs of cardiac decompensation; peripheral arterial disease, status post right lower extremity with stent placement; and COPD with activity and weather-related symptoms. (Tr. 732.) Dr. Onamusi opined that Ms. Hardesty could: "sit frequently, stand or walk occasionally, bend occasionally, squat to a limited extent occasionally, climb steps occasionally, lift up to 20 pounds occasionally, use the upper extremities for fine motor tasks frequently." (*Id*.)

On June 5, 2023, Ms. Hardesty attended a psychological consultative examination conducted by Bryce Gray, Psy.D. HSP. (Tr. 735-38.) Dr. Gray diagnosed persistent depressive disorder with anxious distress, with a note to rule out learning disorder. (Tr. 737.) He opined that Ms. Hardesty had: "restrained limitations with more complex tasks and struggles with comprehension and retention of information"; "minor issues with sustaining concentration and persistence . . . likely due to her depression, anxiety, and limited executive functioning"; "restrained limitations being around others due to her anxiety," noting she lacked "social interactions and [had] no friendships"; and "restrained limitations dealing with stressors and becomes easily overwhelmed . . . due to her suspected learning disorder." (Tr. 738.)

**ii. State Agency Medical Consultants**

On July 5, 2023, state agency medical consultant Abraham Mikalov, M.D., completed a Physical RFC Assessment, opining that Ms. Hardesty could: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, crawl and climb ramp or stairs; and frequently balance. (Tr. 95-96.) Dr. Mikalov opined that Ms. Hardesty should avoid concentrated exposure to extreme heat and cold, wetness, humidity, and fumes odors, dust, gases, and poor ventilation; and should

avoid unprotected heights, dangerous moving machinery, and commercial driving. (Tr. 96.) He found no manipulative, visual, or communicative limitations. (*Id.*) State agency medical consultant Meh Siddiqui, M.D., affirmed Dr. Mikalov's findings on reconsideration on November 2, 2023. (Tr. 106-08.)

On July 14, 2023, state agency psychological consultant Stacia L. Hill, Ph.D., completed a Psychiatric Review Technique ("PRT"), opining that Ms. Hardesty had moderate limitations in all four functional areas. (Tr. 93.) Dr. Hill also completed a Mental RFC Assessment opining Ms. Hardesty could: understand and remember routine, repetitive and one to three step, uncomplicated instructions, but would be impaired for detailed or complex/technical instructions and tasks; carry out routine, repetitive, and one to three step tasks with adequate persistence and pace, but would be limited for detailed or complex/technical tasks; handle brief and superficial contact with coworkers and the public; handle ordinary levels of supervision found in customary work settings; and handle the stresses of a routine, repetitive one to three step tasks. (Tr. 97-98.) State agency psychological consultant Jennifer Kutys, Psy.D., affirmed Dr. Hill's findings on reconsideration on November 2, 2023. (Tr. 104-05, 108-10.)

**C. Function Report**

Ms. Hardesty completed a Function Report on March 19, 2023. (Tr. 237-44.) She reported pain in her legs, lower back, and hands that caused her to need more time for personal care (Tr. 238) and limited her ability to do perform daily activities and socialize (Tr. 239-41). She reported difficulty with written and spoken instructions, stating she was "a little better" following with spoken instructions. (Tr. 242.) She said she was unable to pay attention. (*Id.*) She reported doing the best she could handling stress and said she did not handle changes in

routine well, but "deal[t] with it." (Tr. 243.) She said she was able to get along with authority figures and did not have issues getting along with family or others. (Tr. 241-42.)

**D. Hearing Testimony**

Ms. Hardesty testified in response to questions from the ALJ and her attorney at the May 23, 2024 hearing. (Tr. 47-68.) A Vocational Expert ("VE") also testified. (Tr. 68-76.) Specifically, the VE testified that a hypothetical individual of Plaintiff's age, education, and work experience, with the functional limitations described in the ALJ's RFC determination (Tr. 16-17, 70-71) could perform representative positions in the national economy, including polisher, inspector, and trimmer (Tr. 72-73).

**III. Standard for Disability**

Under the Social Security Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).

To make a determination of disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations, summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform other work available in the national economy. *Id.*

## IV. Law & Analysis

### A. Standard of Review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) ("Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence.").

When assessing whether there is substantial evidence to support the ALJ's decision, the Court may consider evidence not referenced by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245

F.3d 528, 535 (6th Cir. 2001). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "'The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)) (alteration in original). Therefore, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence supports a claimant's position, a court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Although an ALJ decision may be supported by substantial evidence, the Sixth Circuit has explained that the "'decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004))). A decision will also not be upheld where the Commissioner's reasoning does not "build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**A. First Assignment of Error: The ALJ Complied with SSR 96-8p and Adequately Considered Plaintiff's Impairments When Formulating the RFC**

In her first assignment of error, Plaintiff argues that the ALJ did not properly consider the effects of her non-severe impairments—specifically obesity, left-sided carpal tunnel syndrome, and pulmonary nodules—as required under Social Security Ruling ("SSR") 96-8p, and should have included additional RFC limitations stemming from those impairments. (ECF Doc. 9, pp. 9-12.) The Commissioner argues in response that the ALJ properly considered all of Plaintiff's impairments when assessing her RFC, and notes that Plaintiff did not identify evidence of additional functional limitations caused by her obesity, left-sided carpal tunnel syndrome, or pulmonary nodules. (ECF Doc. 10, pp. 6-8.)

SSR 96-8p provides that "[t]he RFC assessment must be based on *all* of the relevant evidence in the case record," explaining further:

> In assessing [the] RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.

SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 61 Fed. Reg. 34474, 34477 (July 2, 1996) (emphasis in original). The Sixth Circuit also recognizes that an ALJ must consider "the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity to render the claimant disabled." *Walker v. Sec'y of Health & Hum. Servs.*, 980 F.2d 1066, 1071 (6th Cir. 1992).

Here, before adopting a light RFC at Step Four (Tr. 16-17), the ALJ considered Ms. Hardesty's obesity, left-sided carpal tunnel syndrome, and pulmonary nodules at Step Two (Tr. 13). She recognized that she must "consider all of the claimant's impairments, including

impairments that are not severe" under 20 C.F.R. § 416.945 and SSR 96-8p (Tr. 11-12), found the three impairments non-severe, and explained "[n]evertheless" that she had "accounted for all impairments in the [RFC] as necessary taking into account the totality of the record" (Tr. 13). Later, in support of the light RFC she adopted at Step Four, the ALJ explained that she had "careful[ly] considered the entire record" and "considered all symptoms and the extent to which the[y] can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (Tr. 16-17.) In similar circumstances, the Sixth Circuit found an ALJ "adequately considered all of a claimant's medical impairments in formulating a residual functional capacity analysis." *See Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1007 (6th Cir. 2025) (citing *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851 (6th Cir. 2020)). In this context, the Court concludes that Ms. Hardesty has failed to show that the ALJ erred under SSR 96-8p or otherwise failed to consider the specified impairments at Step Two or Four of the sequential analysis.

Ms. Hardesty's first specific argument—that the ALJ did not properly consider or account for her obesity (ECF Doc. 9, pp. 9, 10)—does not change this analysis. In support, Plaintiff relies on records noting her obesity diagnosis and one after-visit summary that recommends weight loss to help lower risks from diseases associated with obesity in a section titled: "Additional Information about your Body Mass Index (BMI)." (*See id.* at p. 9 (citing Tr. 620).) But the Sixth Circuit has explained that a "mere diagnosis . . . says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Instead, "'disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.'" *Browning v. Comm'r of Soc. Sec.*, No. 21-5576, 2022 WL 2135560, at *3 (6th Cir. Mar. 15, 2022) (quoting *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir.

2014)). Here, a review of the ALJ's Step Two findings reveals that she provided a detailed explanation of her finding that obesity was a non-severe impairment, as follows:

> [T]he claimant's obesity was evaluated pursuant to SSR 19-2p. First, the undersigned notes that the claimant's body mass index (BMI) was noted to be over thirty. (Ex. 6F pg. 9). Therefore, the undersigned finds obesity to be a medically determinable impairment. However, the claimant's obesity is not severe. <u>The claimant did not receive treatment regarding her obesity, and no medical source opined limitations based upon the claimant's weight. Accordingly, there is no evidence that the claimant's obesity, alone or in combination with other impairments, causes more than minimal limitations in his ability to perform work related activities</u>.

(Tr. 13 (emphasis added).) Ms. Hardesty does not rebut or identify evidence to challenge the ALJ's observations that Ms. Hardesty did not receive treatment for obesity and did not present medical source opinions finding she had limitations relating to her weight. Instead, she simply asserts, without supporting citations, that her obesity "had more than a minimal effect on her ability to perform work related activities" and was "linked to her heart disease, breathing problems, and lumbar spine pain." (ECF Doc. 9, p. 11.) These conclusory, unsubstantiated assertions are insufficient to show that the ALJ's findings lacked the support of substantial evidence. On the contrary, the Court concludes that the ALJ appropriately considered Ms. Hardesty's obesity when assessing the RFC, and Plaintiff has not met her burden to show that the ALJ did not adequately account for limitations relating to her obesity in the RFC.

Ms. Hardesty's second contention—that the ALJ did not properly consider or account for limitations caused by left-sided carpal tunnel syndrome (ECF Doc. 9, pp. 9-10)—also lacks merit. In support, Ms. Hardesty asserts that the ALJ "failed to mention that Plaintiff had an EMG consistent with a bilateral carpal tunnel syndrome, moderate on the right and mild on the left." (*Id.* at p. 9 (citing Tr. 801).) But an ALJ need not "discuss each piece of data in [her] opinion, so long as [she] consider[s] the evidence as a whole and reach[es] a reasoned

conclusion." *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (per curiam)). Here, the relevant EMG is dated from November 2021 (Tr. 800), predating the February 2023 application date by over a year (Tr. 10, 88). And while the ALJ did not discuss the EMG, she did find carpal tunnel syndrome to be a medically determinable impairment, severe on the right (where EMG results were moderate) and non-severe on the left (where EMG results were mild). (Tr. 12, 13.) In this context, Plaintiff has not shown that the ALJ erred by failing to reference the EMG or inadequately explained her reasons for finding the impairment severe on the right and non-severe on the left. Certainly, Ms. Hardesty has not identified evidence that deprives the ALJ's findings of the support of substantial evidence.[3] Accordingly, the Court finds the ALJ adequately considered Ms. Hardesty's left-sided carpal tunnel syndrome when assessing the RFC, and that Ms. Hardesty has not met her burden to show that the ALJ's RFC findings lacked the support of substantial evidence.

Ms. Hardesty's final contention—that the ALJ failed to properly consider or account for limitations relating to her pulmonary nodules (ECF Doc. 9, pp. 10, 11)—also lacks merit. The only support she offers for this argument is a conclusory assertion, without supporting citations, that her pulmonary nodules "were always mentioned along with the COPD, thereby implying that both provided more than minimal limitations on Plaintiff's ability to perform work activities." (*Id*. at p. 10.) But again, "'disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.'" *Browning*, 2022 WL 2135560, at *3 (quoting *Hill*, 560 F. App'x at 551). The mere fact that Ms. Hardesty's pulmonary nodules were mentioned in her treatment records falls far short of showing that the impairment caused

[3] As the Commissioner observes (ECF Doc. 10, p. 8), Ms. Hardesty testified at her hearing on May 23, 2024, that she only had problems with her right hand (Tr. 65-68).

additional limitations that were not already accounted for in the ALJ's analysis of her severe pulmonary impairments, including chronic obstructive pulmonary disease and emphysema. At Step Two, the ALJ observed that Ms. Hardesty's July 2023 CT scan showed multiple stable pulmonary nodules and one additional three-millimeter nodule. (Tr. 13 (citing 1354).) At Step Three, the ALJ found Ms. Hardesty's pulmonary impairments did not satisfy a listing, noting that "the file d[id] not contain evidence of pulmonary function testing with valid results that were within the listing range." (Tr. 13-14.) At Step Four, the ALJ explained:

> [T]he undersigned finds that the claimant's pulmonary impairments do not cause disabling limitations. The claimant testified that she was only able to walk ten steps before she had to stop and take a rest break. Pulmonary function testing showed no more than a moderate obstruction. (Ex. 2F pg. 103; Ex. 9F pgs. 9, 10). Treatment records in February 2023, showed decreased breath sounds, however Judy Bernek, CNP, noted that her lungs were clear. (Ex. 5F pg. 14; Ex. 13F pgs. 8, 12, 18). In June 2023, the claimant was in the emergency room and she had normal breath sounds and normal pulmonary effort. (Ex. 14F pg. 223). Ms. Bernek saw the claimant in June 2023, and the claimant had clear lung sounds, along with even and easy respirations. (Ex. 11F pg. 5). During her consultative examination Dr. Onamusi found that the claimant had no wheezing. (Ex. 9F pg. 13). A nuclear stress test with myocardial perfusion was negative for myocardial ischemia and infarction. (Ex. 14F pg. 16). Left ventricular functioning was normal, with an ejection fraction of seventy-four percent. (Id.). On the same date, a transthoracic echocardiogram found an ejection fraction of fifty-five to sixty percent, with normal wall thickness, normal wall motion, and normal diastolic functioning. (Ex. 14F pg. 135). Furthermore, the undersigned notes that the claimant has continued to smoke, despite advice from her doctors that she should quit. At the hearing, she testified that she smoked a half-pack of cigarettes per day. In February 2023, she was smoking a pack per day. (Ex. 13F pg. 15). This suggests that the claimant's symptoms were not as severe as she alleged.

(Tr. 20.) Given the ALJ's discussion of Ms. Hardesty's pulmonary nodules at Step Two and her thorough analysis of Ms. Hardesty's pulmonary impairments throughout the sequential analysis, the Court finds no merit in Ms. Hardesty's assertion that the ALJ failed to properly consider her pulmonary nodules or other pulmonary impairments when assessing her RFC.

For the reasons set forth above, the Court finds Ms. Hardesty has not shown that the ALJ failed to comply with SSR 96-8p when assessing her RFC. The Court further finds that Ms. Hardesty has failed to show that the ALJ's findings lacked the support of substantial evidence. Accordingly, the Court finds the first assignment of error lacks merit.

**B. Second Assignment of Error: The ALJ Properly Evaluated Plaintiff's Subjective Complaints Under the Applicable Legal Standards**

In her second assignment of error, Ms. Hardesty asserts that the ALJ committed harmful error and failed to properly apply the criteria set forth in SSR 16-3p when she found Ms. Hardesty's subjective complaints were not "entirely consistent with the medical evidence and other evidence of record." (ECF Doc. 9, pp. 12, 15 (citing Tr. 19).) But rather than offering targeted argument in support of this assertion, Ms. Hardesty merely provides a "cut and paste" copy of her earlier summary of the evidence (*compare id.* at pp. 13-15 *with id.* at pp. 2-4) and a general assertion that the ALJ's "finding was not supported by substantial evidence as the evidence as set forth above supported the allegations/testimony regarding her limitations" (*id.* at p. 15). Plaintiff's argument lacks merit for multiple reasons.

First, her argument turns the applicable legal standard on its head. Even if the evidence cited by Ms. Hardesty did supply substantial evidence to support a more restrictive RFC, as she argues, this Court cannot overturn the ALJ's contrary decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. In other words, even if Ms. Hardesty is correct that the evidence "supported the allegations/testimony regarding her limitations" (ECF Doc. 9, p. 15), that fact alone would fall far short of establishing that the ALJ's contrary finding lacked the support of substantial evidence.

Second, the Sixth Circuit has made it clear that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."

*McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted) (alterations in original). This is because "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Id.* Further, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones*, 336 F.3d at 476; *see also* 20 C.F.R. § 416.929(a) and SSR 16-3p, *Evaluation of Symptoms in Disability Claims*, 82 Fed. Reg. 49462, 49463 (Oct. 25, 2017) (explaining that a claimant's statements of symptoms alone are not sufficient to establish the existence of a physical or mental impairment or disability).

Here, rather than engaging with the ALJ's written findings and presenting a developed argument as to how the ALJ erred in assessing Ms. Hardesty's subjective complaints, Plaintiff has simply summarized the evidence and asserted that the ALJ should have made a different finding. By doing so, she has both waived the argument set out in her second assignment of error and improperly "litigated this appeal as if [this Court] were the factfinder," when that was the ALJ's role. *See Robbins v. Comm'r of Soc. Sec.*, No. 24-3201, 2024 WL 4603964, at *5 (6th Cir. Oct. 29, 2024) (citing *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) ("The Secretary, and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly.")).

Although the above procedural flaws are sufficient to preclude relief under the second assignment of error, the Court also concludes based on a review of the ALJ's written decision that Ms. Hardesty's arguments in the second assignment of error lack merit.

Under the two-step process used to assess the limiting effects of a claimant's symptoms, a determination is first made as to whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's

symptoms. SSR 16-3p, 82 Fed. Reg. 49462, 49463; *Rogers v. Comm'r Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)). If that requirement is met, the second step is to evaluate of the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform work-related activities. SSR 16-3p, 82 Fed. Reg. 49462, 49463; *Rogers*, 486 F.3d at 247. In evaluating the second step, an ALJ should consider objective medical evidence, subjective complaints, information about a claimant's prior work record, and information from medical and non-medical sources. SSR 16-3p, 82 Fed. Reg. at 49464-49466; 20 C.F.R. § 404.929(c)(3). Relevant factors include daily activities, types and effectiveness of medications, treatment received, and other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 82 Fed. Reg. at 49465-49466; 20 C.F.R. § 404.929(c)(3). An ALJ need not discuss all regulatory factors he considers, only those she finds pertinent to the case. SSR 16-3p, 82 Fed. Reg. at 49467.

Here, the ALJ found that Ms. Hardesty's medically determinable impairments could be expected to cause the alleged symptoms, but also found "the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence of record." (Tr. 19.) After considering the subjective complaints, including Plaintiff's allegations that her conditions caused both physical and mental limitations, the ALJ explained in detail why she found them not entirely consistent with the evidence of record. (Tr. 17, 19-20.)

As to Ms. Hardesty's statements that she could only lift five to ten pounds, stand for five to seven minutes, and walk about ten feet, the ALJ found the limitations were not consistent with evidence in the record, including: "diagnostic testing [that] revealed no more than moderate disc protrusions of the lumbar spine and moderate disc height loss" (Tr. 19 (citing Tr. 739, 741-42); "[s]tress testing [that] showed a normal ejection fraction with no ischemia and only slightly

diminished ankle brachial testing on the right side" (*id.* (citing Tr. 1184, 1303, 1324)); "[t]reatment records in the file [that] generally showed no focal neurological deficit and a normal gait" (*id.* (citing Tr. 473, 586, 693, 824, 829); testimony that she did not use an assistive device (*id.*; Tr. 64); and evidence of positive straight leg test in June 2023 (*id.* (citing Tr. 1392), but evidence of normal strength and negative straight leg raise test in May 2023 (*id*. (citing Tr. 720-21, 724)). Ms. Hardesty has provided no direct rebuttal to these findings. (ECF Doc. 9.)

As to Ms. Hardesty's statements that she was unable to focus or pay attention, the ALJ found the allegations inconsistent with the evidence of record, including: examination findings from the consultative examination that showed no memory impairment and satisfactory attention span (Tr. 19 (citing Tr. 731)); no record of "specific psychiatric treatment with a specialist, such as a psychiatrist or psychologist since the filing of th[e] claim" (Tr. 19); examination findings in February 2023, showing "a normal behavior, mood, and affect, and normal attention" (*id.* (citing Tr. 823, 829)); evidence from her psychological consultative examination that showed "she was unable to perform serial sevens subtractions, [but] . . . had adequate persistence," "recalled three digits forward, and in reverse, and . . . recalled three words immediately and only one of three after a brief delay" (*id.* (citing Tr. 737)). While the ALJ found this evidence "suggest[ed] that [Ms. Hardesty]'s symptoms were not as disabling as she alleged" (Tr. 19), she acknowledged that Ms. Hardesty "was prescribed medication for her depression and . . . had intermittent eye contact during her consultative examination," and "accounted for this by limiting her to simple, routine tasks, without a production rate pace, frequent interaction with supervisors, occasional interaction with co-workers, and occasional and superficial interaction with the public." (*Id.*) Ms. Hardesty also provided no direct rebuttal to these findings. (ECF Doc. 9.)

Finally, as to Ms. Hardesty's assertion that her pulmonary impairments caused disabling limitations and her claim that "she was only able to walk ten steps before she had to stop to take a rest break" (Tr. 20), the ALJ found the allegations inconsistent with "[p]ulmonary function testing showed no more than a moderate obstruction" (*id.* (citing Tr. 409, 727-78)). The ALJ also acknowledged that February 2023 treatment records "showed decreased breath sounds," (*id.* (citing Tr. 823, 826)), but noted that her lungs were clear on examination in September 2022 (*id.* (citing Tr. 586)),[4] she had "normal breath sounds and normal pulmonary effort" in June 2023 (*id.* (citing Tr. 1391)), she had "clear lung sounds, along with even and easy respirations" in June 2023 (*id.* (citing Tr. 743); and "Dr. Onamusi found that the claimant had no wheezing" at her consultative examination (*id*. (citing Tr. 731)). The ALJ also noted that: "[a] nuclear stress test with myocardial perfusion was negative for myocardial ischemia and infarction" (*id.* (citing Tr. 1184)); "[l]eft ventricular functioning was normal, with an ejection fraction of seventy-four percent" (*id.*); and "a transthoracic echocardiogram found an ejection fraction of fifty-five to sixty percent, with normal wall thickness, normal wall motion, and normal diastolic functioning" (*id.* (citing Tr. 1303)). Finally, the ALJ found Ms. Hardesty's subjective complaints of disabling limitations relating to her pulmonary conditions were not entirely consistent with evidence that Ms. Hardesty "continued to smoke, despite advice from her doctors that she should quit," noting that "she testified that she smoked a half-pack of cigarettes per day" at the May 2024 hearing (Tr. 20, 56-57), and "was smoking a pack per day" in February 2023 (*id.* (citing Tr. 826)). Ms. Hardesty has again provided no direct argument to rebut these findings. (ECF Doc. 9.)

Consistent with SSR 16-3p, it is clear that the ALJ considered the medical evidence relating to Ms. Hardesty's medically determinable impairments, including objective diagnostic

---

[4] The ALJ notes that this examination finding was from a visit with APRN Brenek. However, the cited record (Ex. 5F/14) is from a visit with Dr. Abdelbaki. (Tr. 581, 586.)

findings, examination findings, treatments prescribed to treat her conditions, and her adherence to treatment recommendations. The ALJ also evaluated the medical opinion evidence, finding the consultative examiners' opinions and state agency medical and psychological consultants' opinions "somewhat persuasive." (Tr. 20-22.) While Ms. Hardesty cites the consultative examiner opinions in her second assignment of error (ECF Doc. 9, pp. 15 (referencing Dr. Gray's psychological examination and opinion), p. 16 (referencing Dr. Onamusi's opinion)), she does not challenge the ALJ's evaluation of the opinion evidence and the Court finds the ALJ sufficiently considered and articulated her persuasiveness findings as to each of the opinions.

For all of the reasons set forth above, the Court concludes that the ALJ considered the factors set forth in SSR 16-3p and 20 C.F.R. § 416.929(c)(3), provided "specific reasons for the weight given to the individual's symptoms," and made findings that were "consistent with and supported by the evidence." SSR 16-3p, 82 Fed. Reg. at 49467. It is therefore clear that the ALJ adequately articulated her reasons for finding the reported "intensity, persistence and limiting effects" of Plaintiff's symptoms were not "entirely consistent" with the record. (Tr. 34.)

"The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts," *Blakley*, 581 F.3d at 406 (internal quotations omitted) (alteration in original), and it is not this Court's role to "try the case *de novo*, []or resolve conflicts in evidence[.]" *Garner*, 745 F.2d at 387. For the reasons explained above, the Court finds Ms. Hardesty has not met her burden to show that the ALJ erred in evaluating her subjective symptom complaints or that the ALJ's analysis lacked the support of substantial evidence.

Accordingly, the Court finds the second assignment of error lacks merit.

## V. Conclusion

For the foregoing reasons, the Court **AFFIRMS** the Commissioner's decision.

September 28, 2026

*/s/Amanda M. Knapp*
AMANDA M. KNAPP
United States Magistrate Judge